# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION

JOSEPH MOSLEY,

    Plaintiff,

    vs.

ANDREW PUCKETT, *et al.*,

    Defendants.

Case No. 1:20-cv-0043

McFarland, J.
Bowman, M.J.

## REPORT AND RECOMMENDATION

Joseph Mosley, an inmate in the custody of Ohio Department of Rehabilitation and Correction (ODRC), alleges that on May 1, 2019, while incarcerated at Warren Correctional Institution (WCI), Corrections Officers Defendants Puckett, Reece, and Webb, used excessive force against him. This matter is now before the Court on Defendants' Motion for summary judgment and the parties' responsive memoranda.

## I. Background and Facts.

According to the Complaint, while being escorted to medical, Plaintiff was "savagly (sic) attack (sic) with facial punches from Andrew Puckett, and Officer Webb in the presance (sic) of captain turner (sic) who failed to "stop" the assult (sic)," (Doc. 3, PageID# 38). Plaintiff is seeking compensatory damages in the amount of $75,000.00 from the remaining Defendants in their individual capacities. (Id., PageID# 44).

After reviewing the complaint, this Court allowed Plaintiff the opportunity to proceed with his Eighth Amendment claim against Defendants Puckett, Reece, Sandridge, Turner, and Webb in their individual capacities only. (Doc. 4 & 12, R&R and Entry). All other claims and parties were dismissed. (Id.) On May 29, 2020, Defendants

Puckett, Reece, Sandridge, and Turner filed an answer. (Doc. 17). Service on Defendant Webb was never perfected. (Doc. 21). Defendants now move for summary judgment.

In support of their motion for summary judgment, Defendants presented four declarations, video recordings of the sequence of events, the use of force reports, Plaintiff's medical records and grievance history. The evidence of record establishes the following undisputed facts:

On May 1, 2019, Plaintiff attempted to enter the operations building. Defendant Reese asked him for his pass. Plaintiff did not have a pass and was told to return to his unit. Plaintiff became agitated and argumentative with the Officer. Plaintiff was again instructed to return to his unit. Plaintiff refused, and Defendants Sandridge began escorting Plaintiff back to his unit. Plaintiff cooperated initially but then fell to the ground and refused to cooperate further. Plaintiff was then placed in restraints and escorted to his cell. After Plaintiff was place in his cell, it was determined that Plaintiff needed to be escorted to medical for an examination.

Thus, Defendant Puckett placed a restraint on Plaintiff's right hand. Plaintiff immediately pulled his hand, with the restraint, back into his cell. Puckett was able to stop Plaintiff from gaining full control of the restraint by grabbing onto the belt of the restraint as it was pulled into Plaintiff's cell. Defendant Puckett then gave Plaintiff several directives to give up the restraint, stop resisting, and comply with his orders. Plaintiff refused to comply with these directives. Plaintiff was given one last directive to comply before OC spray would be administered. Plaintiff did not comply, and OC spray was deployed into the cell. Plaintiff continued to resist, and Officer Webb deployed a second burst of OC into the cell before Plaintiff finally complied. Officer Webb and Officer Puckett

removed Plaintiff from his cell and escorted him to medical for an examination and treatment for OC.

Video of the event up to this point was produced and corroborates the facts outlined herein and in the use of force report. (Doc. 28). However, the events that occur after Plaintiff is removed from his cell and escorted to medical were not captured by video.

Next, according to Plaintiff, while he was being escorted to medical, Defendant Puckett punched him on the right side of his jaw. (Doc. 28, Ex. D, Mosely Dep. at p. 34, 103-105). Notably, at his deposition, Plaintiff outlined the following:

> So we keep walking and we literally take like three steps and I call him a bitch. I said, man, you're a bitch, just like Reece. And he cracked me. Hit me hard, too. Boom. I seen a flash, and I felt my jaw shift.
>
> ******
>
> And they he turned into a right hook and he hit me literally right here in the middle of my jaw and I felt a shift.

(Doc. 28, Ex. D, Mosely Dep. at p. 34).

When he arrived in medical, Plaintiff reported that Defendant Puckett punched him on his right jaw during his escort to medical. (Doc. 28, Ex. D, Deposition of Mosley, p. 104). Upon examination, the objective evidence showed that Plaintiff was "talking and smiling per my direction without difficulty, full ROM of mandible, OC to back, redness to right cheek, steady gait, speech clear, no injuries noted." Id. While in medical, Plaintiff also told Officer Turner that he was suicidal. Id. As a result he was placed on Mental Health Observation.

The next day, it was noted that Plaintiff's left jaw was noticeably swollen. He was sent to medical and then to OSU medical center. At OSU, he was treated for fractured

jaw in two places, which included surgery to wire Plaintiff's jaw. (Doc. 28, Use of Force Report, p. 6, Doc. 28, Ex. M, Medical Records).

Plaintiff received a rules violation for physical resistance to a direct order and disobedience of direct order. (Doc.28, Ex. 4).  After a hearing, it was determined that a rule violation occurred, and the matter was referred to the Rules Infraction Board (RIB). Id.  Plaintiff plead guilty to the violation and the charges were affirmed. Id. The disposition of the RIB provided notice to Plaintiff that he could appeal the decision to the warden within seven days.  Id.

Thereafter, on May 31, 2019, Plaintiff filed an informal complaint relating to the alleged assault by Officer Puckett.  (Doc. 3, PageID#45).  Doug Luneke, the Deputy Warden of Operation at WCI, responded to Plaintiff's complaint noting that this "Use of Force was reviewed by the DWO, and has been sent to Committee for further investigation per policy 63-UOF-03.  This is a pending investigation case at this point no policy violations noted."  Id.

The Use of Force Report was completed in July 2019. Notably, the Report indicates that Plaintiff reported that he "was assaulted by staff and my jaw is broke and I need an x ray of my jaw." (Doc. 28, Ex. E. p. 5). The escort staff and Plaintiff's cellmate, who was being escorted to medical right behind Plaintiff, all stated that they did not see anyone strike Plaintiff. Doc. 28, Ex. E, p. 6). The use of force Report further states:

> It was determined that he had two fractures. It should be noted that the inmate had recent surgery in the area of the break.  Mosley has an expensive Mental Health history. He is known to cause self-injury in order to achieve a desired outcome. Based on Inmates own testimony of disrespecting staff and that of Captain Turner, the inmate was wanting an intuitional transfer.  His behavior was to provoke staff in an attempt to get a negative response, thus justifying a quick transfer. Only reactive force based on the inmates' actions was utilized during this incident.

4

Id at p. 6.

Ultimately, the Use of Force Report concluded:

Based on inmate Mosely's behavior leading up to the incident and the fact that he physically resisted the officer by pulling on the restrained, it was a reasonable response for the officer to disperse OC into the cell. All force utilized was justified.

(Doc. 28, Ex.3, Use of Force Report).

## II. Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." A dispute is "genuine" when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The moving party has the burden of showing an absence of evidence to support the non-moving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986).

Once the moving party has met its burden of production, the non-moving party cannot rest on his pleadings, but must present significant probative evidence in support of his complaint to defeat the motion for summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. at 248-49. The mere existence of a scintilla of evidence to support the non-moving party's position will be insufficient; the evidence must be sufficient for a jury to reasonably find in favor of the nonmoving party. *Id*. at 252.

**III. Defendants' motion for Summary Judgment**

Defendants assert that they are entitled to judgment as a matter of law because Plaintiff has failed to establish an Eighth Amendment violation of his constitutional rights. Defendants further contend that Plaintiff failed to properly exhaust his administrative remedies regarding his use of force incident. Defendants also argue that Plaintiff failed to properly serve Defendant Webb. Upon careful review, the undersigned finds that Plaintiff failed to properly exhaust his administrative remedies under the PLRA.

Pursuant to the Prison Litigation Reform Act ("PLRA"), prisoners are required to fully exhaust available institutional remedies prior to filing suit in federal court. See 42 U.S.C. § 1997e ("No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."). In *Porter v. Nussle,* the Supreme Court held that the "PLRA's exhaustion requirement applies to all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Id.*, 534 U.S. 516, 532, (2002) (citing *Wilson v. Seiter*, 501 U.S. 294, 299, n. 1, (1991)). It has become well-established that "exhaustion is mandatory under the PLRA and unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).

However, an inmate's obligation to exhaust hinges on the availability of administrative remedies. *Ross v. Blake*, 136 S.Ct. 1850, 1853 (2016). There are three circumstances in which an administrative remedy, although officially available, is not capable of use to obtain relief: (1) an administrative procedure is unavailable when it

6

operates as a "simple dead end," with officers unable or consistently unwilling to provide any relief to aggrieved inmates; (2) an administrative scheme might be so opaque it becomes practically incapable of use to the ordinary prisoner; and (3) a grievance process is rendered unavailable when prison administrators thwart inmates from taking advantage of it through "machination, misrepresentation, or intimidation." *Id.* at 1853-54.

Pursuant to Ohio Adm. Code 5120-9-31(J), there is a three-step process for resolving inmate complaints in Ohio. First, within fourteen days of the event giving rise to the complaint, the inmate shall file an informal complaint to the direct supervisor of the staff member, or department most directly responsible for the particular subject matter of the complaint. Ohio Adm. Code 5120-9-31(J)(1). Second, if the inmate is dissatisfied with the ICR response, the inmate may file a Notice of Grievance ("NOG") with the inspector of institutional services. Ohio Adm. Code 5120-9-31(J)(2). The inmate must file all grievances no later than fourteen days from the date of the informal complaint response. Id. Finally, if the inmate is dissatisfied with the disposition of grievance, the inmate may file an appeal with the Office of the Chief Inspector within fourteen days of the date of the disposition of grievance. Ohio Adm. Code 5120-9-31(J)(3).

Here, Defendants argue that Plaintiff failed to exhaust his administrative remedies on the issues raised in his complaint. Specifically, Defendants argue that Plaintiff only completed the first step of the inmate grievance procedure with respect to any issue raised in the Complaint. The Assistant Chief Inspector of DRC confirmed that Plaintiff only complained in an ICR, not in a grievance or appeal. (See Doc. 28, Ex. N). As detailed above, according to Plaintiff's grievance history, Plaintiff filed an Informal Complaint regarding use of force on May 31, 2019. Id. He did not file a grievance or appeal relating

7

to the use of force incident on May 1, 2019, nor did Plaintiff appeal the RIB decision from May 2019.  As such, Defendants contend that Plaintiff pursued only the first step of the grievance procedure and the PLRA, therefore, bars him from seeking redress under § 1983.  The undersigned agrees.

The failure of a prisoner plaintiff to satisfy the exhaustion requirement is an affirmative defense that Defendants must raise and prove. *Jones v. Bock*, 549 U.S. 199, 216 (2007). Once the defense of failure to exhaust is raised and supported, the burden is on Plaintiff to present evidence showing that he has complied with the PLRA's requirement of exhaustion. *See Napier v. Laurel Cnty., Ky.*, 636 F.3d 218, 225 (6th Cir. 2011).

Here, in his response to Defendants' motion for summary judgment, Plaintiff failed to address Defendants' contention that he failed to exhaust his administrative remedies. As such, Plaintiff failed to provide any evidence that he complied with the PLRA's exhaustion requirement. The undersigned recognizes that Plaintiff's complaint asserts that he filed an informal complaint, a grievance, and an appeal to the Warden. However, upon close inspection, the grievance and appeal filed by Plaintiff, relate to the medical care he received related to his jaw injury, not the use of force claims asserted in his informal complaint.  More importantly, even assuming Plaintiff completed the first step of the grievance procedure, Plaintiff's informal complaint was not submitted within 14 days of the May 1, 2019 incident as required by Ohio Adm. Code 5120-9-31(J).  Therefore, Plaintiff failed to adhere to the mandatory institutional grievance procedure. See *Jones*, 549 U.S. at 200 (finding that the applicable procedural rules a prisoner must properly

8

exhaust are defined by the prison grievance process itself) (citing *Woodford*, 548 U.S. at 88).

Moreover, Plaintiff has neither alleged the established administrative process is "not capable of use to obtain relief," nor that Defendant, or any other correctional officer or institutional staff member, affected his ability to participate in the grievance process. *See Ross*, 136 S.Ct. at 1853. Accordingly, Defendants are entitled to judgment as a matter of law.

### III. Conclusion

For the reasons explained herein, **IT IS RECOMMENDED THAT** Defendants motion for summary judgment (Doc. 28) should be **GRANTED**, all pending motions (Doc. 64) be **DENIED as MOOT**; and this case be **DISMISSED WITH PREJUDICE** from the active docket of this Court.

 *s/ Stephanie K. Bowman*
Stephanie K. Bowman
United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOSEPH MOSLEY,

    Plaintiff,

vs.

ANDREW PUCKETT, *et al.*,

    Defendants.

Case No. 1:20-cv-0043

McFarland, J.
Bowman, M.J.

**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report & Recommendation ("R&R") within **FOURTEEN (14) DAYS** after being served with a copy thereof. That period may be extended further by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the R&R objected to, and shall be accompanied by a memorandum of law in support of the objections. A party shall respond to an opponent's objections within **FOURTEEN DAYS** after being served with a copy of those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).